O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

| Present: The Honorable | Otis D. Wright II, United States District Judge | |
|---|---|---|
| Raymond Neal | Not reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not present | Not present |

**Proceedings (In Chambers):**      **Order DENYING Plaintiffs' Rule 59(a) Motion for New Trial [92]**

    Currently before the Court is Plaintiffs Luis Gomez and Maria Gila Gomez's (collectively, "Plaintiffs") Rule 59(a) Motion for New Trial. Having carefully considered the papers and exhibits submitted in support of and in opposition to the instant motion, the parties' oral arguments at the March 15, 2010 hearing on this matter, and the trial transcripts in this case, the Court **DENIES** Plaintiffs' Motion for New Trial for the following reasons.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

    Because the parties are no doubt intimately familiar with the facts of this case leading up to trial, the Court repeats only those portions of the trial proceedings relevant to a determination of the instant Motion.

    A.  TESTIMONY PRESENTED AT TRIAL

    Among others, Plaintiffs called Ms. Blanca Martinez ("Martinez"), a Carl's Jr. employee, to testify regarding what she witnessed while working the night Decedent Jose Gomez ("Decedent") was shot. (Dkt. # 115, Transcript of Trial, Gomez, et al. v. City of Torrance, et al., CV 07-790 (C.D.Cal. Dec. 8, 2009) "Dec. 8 Transcript" at 95.) Martinez testified that Decedent was "being abusive," insulting the officers, and "wasn't doing what the police told him to do with his hands." (Dec. 8 Transcript at 98.) After failing to elicit clear testimony from Martinez regarding her police interviews after the shooting, Plaintiffs excused Martinez and the Court recessed. (Dec. 8 Transcript at 100.) Plaintiffs' Counsel then stepped outside to briefly converse with Martinez to correct a "communication problem," and then asked to re-call her to clarify her testimony. (Dec. 8 Transcript at 100-102.) Over Defendants' objection, the Court permitted Plaintiffs to re-call Martinez, who only then stated that police contacted her at home

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

after the shooting.  (Dec. 8 Transcript at 102-103.)

     Lourdes Gomez ("Lourdes"), Decedent's sister, was called to talk about the events following the death of her brother and leading up to the late filing of this lawsuit.  (Dec. 8 Transcript at 104.)  She stated she contacted the Los Angeles County Bar Association to ask who "to speak to to try to find out what happened or to find out if the shooting was justified." (December 8 Transcript at 107.)  She explained that the family then consulted with at least two or three lawyers regarding their potential suit, none of whom agreed to represent them.  (Dec. 8 Transcript at 111.)  Lourdes testified that this was so even though she shared with one of the lawyers, a Mr. Joseph Perry ("Perry"), that they "had gotten information that [her] brother was unarmed" from "people that worked at Carl's Jr that knew people that knew [them]."  (Dec. 8 Transcript at 108-09.)  Though Perry refused to represent them at that time, he agreed to review any further information the family was able to later obtain. (Dec. 8 Transcript at 109.)  Perry also notified the family that they only had two years from the date of the incident to file a lawsuit for wrongful death, and that they could file it on their own; Lourdes admitted she and her family understood this.  (Dec. 8 Transcript at 115, 127.)  Lourdes continued on to testify that the family filed a wrongful death claim with the City of Torrance prior to receiving the police report, and admitted that before the two-year statute of limitations had run, she "thought that maybe [the shooting] wasn't [justified]." (Dec. 8 Transcript at 111, 114.)  Lourdes then stated that after the statute of limitations had passed and she "wasn't trying to find out anything else," the family was contacted by Plaintiffs' Counsel and his investigator, Ron Cain, who "had some information that showed that maybe the shooting was not justified and . . . he wanted to know if [the] family would be willing to meet with [them]."  (Dec. 8 Transcript at 118.)

     On cross examination, Lourdes admitted that she did not visit the Carl's Jr to attempt to find witnesses to the shooting because it was "very hard to try to go there" (Dec. 8 Transcript at 123), nor did she follow up with the wrongful death claim that the City ultimately denied. (Dec. 8 Transcript at 133-35.)  She stated that she did not continue trying to file a suit because "after a while, it was just getting too hard for [her] to keep hearing no."  (Dec. 8 Transcript at 139.)  When asked about surveillance videos of the restaurant the night her brother was shot, Lourdes testified that even though she wanted to know what had happened, she did not watch them when she found out they existed, nor did she ask any one else to watch them for her.  (Dec. 8 Transcript at 147.)  When asked why, she simply stated "I don't want to see that."  (Id.)  Finally, when asked what Defendants had done other than not helping Plaintiffs recover Decedents belongings and not giving them the police report earlier that prevented them from filing suit, Lourdes stated "They were not preventing us from filing a lawsuit.  They were just not being forthcoming with the events that took place on that night."  (Dec. 8 Transcript at 155.)

     The Court then heard from another witness to the shooting, Ricardo Macias ("Macias"),

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

who answered "no" when asked if the statement attributed to him in the police report was a lie or fabrication. (Dkt. # 116, Transcript of Trial, Gomez, et al. v. City of Torrance, et al., CV 07-790 (C.D.Cal. Dec. 9, 2009) "Dec. 9 Transcript" at 33, 43.) Macias also testified, on the Court's prompting, that even though it was not in the police report, he was watching the Decedent before he was shot, rather than "those guns" pointed at him by the police. (Dec. 9 Transcript at 51.)

The Court also heard from Plaintiff Maria Gomez ("Mrs. Gomez"), Decedent's mother. (Dec. 9 Transcript at 64.) Despite all of Plaintiffs' Counsels' prompting, Mrs. Gomez repeatedly testified that she did not recall ever having received or reviewed a police report following her son's death. (Dec. 9 Transcript at 67, 70.) She also stated that she never wanted to watch the surveillance video documenting her son's death, and that she was aware that there was a two-year statute of limitations on her claim.[1] (Dec. 9 Transcript at 68, 70-71.) The Court noted, out of the presence of the jury, that Plaintiffs' Counsel never asked Mrs. Gomez why, knowing of the two-year statute of limitations, she failed to file suit within that time. (Dec. 9 Transcript at 74.)

Based on Plaintiffs' Counsels' failure to elicit any reason thus far for Plaintiffs' decision not to timely file suit, the Court allowed Plaintiffs to re-call Lourdes to try and establish the elements of fraudulent concealment. (Dec. 9 Transcript at 77, 79-83.) When asked to list the factors that led the family to forego the filing of their lawsuit, Lourdes stated that "all of the lawyers [they] talked to wouldn't take the case" because they felt the shooting was justified based on the police report.[2] (Dec. 9 Transcript at 85.) On that basis, Lourdes was led to posit that the police report was a factor in the family not filing their suit. (Id.) Lourdes then stated that her understanding of the police report's influence on various lawyer's declining the case was that her brother was not compliant with the instructions of the police officers. (Dec. 9 Transcript at 88-89.) When asked again of the police report was a factor in the family not filing suit, Lourdes stated "I mean I guess it is a factor if the lawyers are looking at it and saying based on this no we can't or no we won't." (Id.)[3]

---

[1] The jury submitted questions of both Maria and Lourdes Gomez regarding the video surveillance that Plaintiffs claim was concealed, including whether or not Plaintiffs ever inquired on their own in the two years following the incident whether there was any video footage that they could view. (Dkts. 82, 84.)

[2] The Court notes that Lourdes Gomez is not a named Plaintiff in this action, and that Lourdes stated that she does not think that she ever translated the police report for her mother. (Dec. 9 Transcript at 89.)

[3] The record reflects that before testimony closed for the day, the Court allowed Plaintiffs to call Ron Cain, Plaintiffs' Private Investigator, to discuss his many years of service to the profession. (Dec. 9 Transcript at 90.) Though Mr. Cain's testimony was "tangential," even by Plaintiffs' Counsel's standards, the Court indulged Plaintiffs on the basis that Counsel was concerned Mr. Cain had been

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

Finally, the Court allowed Plaintiffs to belatedly call their expert, Roger Clark, who had been hired to comment on liability for Decedent's death. (Dkt. # 117, Transcript of Trial, Gomez, et al. v. City of Torrance, et al., CV 07-790 (C.D.Cal. Dec. 15, 2009) "Dec. 15 Transcript" at 7.) Mr. Clark testified that he was an expert in "police procedures, apprehension tactics, [and] field tactics." (Dec. 15 Transcript at 9.) Mr. Clark testified that a witness, John Varnell ("Varnell"), who had been omitted from the police report, was an important witness given that he watched events unfold in the restaurant for approximately two minutes and forty-five seconds, even though he left the scene before the police entered the restaurant and before Decedent was shot.[4] (Dec. 15 Transcript at 11-13, 16, 27.) Clark then admitted upon further prompting that not only was some of the information that Varnell reported to the dispatcher incorrect (he reported that Decedent was armed with a box cutter when in fact Decedent was "armed" with a toy gun), (Dec. 15 Transcript at 23), but that the basis of his liability opinion (that Varnell's information had not been conveyed to the officers on the scene and that this alleged failing was later concealed) was in fact not true either. Indeed, Clark further clarified that Varnell's call was recorded and preserved, and that according to the police communication log, the information he had conveyed to the dispatcher had in fact been broadcast to responding officers. (Dec. 15 Transcript at 27, 38-40.)

After the close of Plaintiffs' case, Defendants made a Rule 50 Motion for Judgment as a Matter of Law. (Dec. 9 Transcript at 130.) Despite the Court's opinion that Defendants were entitled to judgment as a matter of law on the basis that Plaintiffs failed to meet their burden on the elements of fraudulent concealment, that is, they specifically failed to show that Defendants took any action to dissuade or discourage them from filing a lawsuit within the limitations period, or did anything to which estoppel might apply, the Court denied Defendants' motion in favor of Plaintiffs, and agreed to submit the case to the jury. (Dec. 9 Transcript at 160-61.)

---

portrayed as a "bag holder for an ambulance chaser." (Dec. 9 Transcript at 82.) The Court expressed sincere concern about Plaintiffs "saving [their] lawsuit," but nevertheless, allowed Plaintiffs' Counsel to answer what he felt were personal accusations against him and his legal team. (Dec. 9 Transcript at 83.)

[4] The Court also briefly heard from Mr. Varnell, who offered testimony that, among other things, he was told that he could leave the scene after recounting what he saw to the police dispatcher from the drive-through window because "they had countless witnesses" in the restaurant, that his exit from the drive-through lane was partially blocked by a truck, that there was a police car in the street in front of the restaurant, that he thought that the Decedent had a box cutter, that Decedent was held for the duration that he was watching by a "bigger guy" in "a bear hug," and that he did in fact leave before the police entered the restaurant. (Dec. 9 Transcript at 110-11, 113-14.) Varnell also confirmed that the police communication log seemed to describe what he had reported to the dispatcher. (Dec. 9 Transcript at 119-20.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

B.  JURY INSTRUCTIONS

The Court instructed the jury as follows:

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be. It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I am about to give it to you . . .

[Defendants' conduct] need not be shown to be directed specifically against the bringing of an action. It is sufficient if the conduct was directed toward concealing facts or evidence which would cause the plaintiffs to not file the action. Passive conduct in failing to provide information is not enough to prevent the defendant from asserting the statute of limitations unless the defendant has a duty to disclose the information. Moreover, a plaintiff may not disregard reasonably available avenues of inquiry which if vigorously pursued might yield the desired information . . .

In order for the defendants to be precluded from asserting the statute of limitations as a defense to the lawsuit, the plaintiffs must prove all of the following by a preponderance of the evidence. One, the defendants acted with the intent to prevent the plaintiffs from instituting a lawsuit. Two, the acts of the defendants deprived the plaintiffs of their rights under the due process clause of the United States Constitution. Three, the plaintiffs used due diligence in attempting to discover facts about the suspected wrongful conduct by using reasonable avenues of inquiry. Four, the defendants are responsible for the plaintiff's inability to discover the relevant facts necessary to initiate a lawsuit. Five, the defendants active conduct must be above and beyond the wrong-doing upon which the plaintiff's claim is filed. Six, additionally, and only as to the City of Torrance, the plaintiffs must prove that an individual city official or employee was responsible for the fraudulent concealment pursuant to an official policy, custom or long standing practice. Official policy means a rule or regulation promulgated, adopted or ratified by the defendant City of Torrance. Practice or custom means any permanent wide-spread, well-settled practice or custom that institutes a standard operating procedure of the City of Torrance.

(Dec. 15 Transcript at 59-71.)

C.  JURY VERDICT

The jury returned a verdict in favor of Defendants, specifically finding that Plaintiffs did

Case 2:07-cv-00790-ODW-SH  Document 119  Filed 04/23/10  Page 6 of 13  Page ID #:1050

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

not prove by a preponderance of the evidence that "any city official or employee fraudulently concealed the true facts surrounding the death of Jose Gomez with the intent to prevent the plaintiffs from filing a lawsuit within the applicable statute of limitations period." (Dec. 15 Transcript at 120-21.) Plaintiffs' Counsel declined to poll the jury after the verdict was published, noting that the exercise was unnecessary given that the "record reflect[ed] that it was a unanimous verdict." (Dec. 15 Transcript at 121.)

## II.    LEGAL STANDARD

"The trial court may grant a new trial, even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir. 1976), *cert. denied,* 429 U.S. 1074 (1977) (internal quotations and citation omitted); *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (citations omitted). In order to establish a miscarriage of justice on the basis of a legal error committed by the trial court, the error must be reversible error, that is, one that was prejudicial or that more probably than not tainted the verdict. *Engquist v. Or. Dept. of Agric.*, 478 F.3d 985, 1009 (9th Cir. 2007) (citations omitted). *See also Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1373-75 (9th Cir. 1987) (affirming denial of new trial on the basis that there was no miscarriage of justice because alleged error of law was harmless); *Tucker v. U.S.,* 214 F.2d 713, 714-15 (9th Cir. 1954) (nothing that a legal error must be prejudicial in order to result in a miscarriage of justice such that it constitutes reversible error).

"The authority to grant a new trial [ ] is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980) (per curiam). *See also Vickery v. Fisher Governor Co.*, 417 F.2d 466, 470 (9th Cir. 1969) (trial court has "wide judicial discretion" in considering motion for new trial). The trial court may weigh evidence and witness credibility in determining whether to grant a motion for a new trial, and abuses its discretion in granting the motion "if the jury's verdict is not clearly against the weight of the evidence." *Roy v. Volkswagen of Am., Inc.*, 896 F.2d at 1176 (citations omitted). A Rule 59 motion should also not be used to "relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986). S*ee also Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978). Thus, a party who fails to present his strongest case is not entitled to a second opportunity by moving for a new trial. *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d at 1220.

## III.    DISCUSSION

Plaintiffs assert a number of legal errors on the part of this Court as their basis for moving

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

for a new trial, including: (1) that the bifurcation of the trial into fraudulent concealment and wrongful death phases denied Plaintiffs the opportunity to prove intent to conceal, (2) that the Court improperly excluded evidence of Defendants' intent to conceal, (3) that the jury instructions and verdict form were erroneous and prejudicial, and finally (4) that the Court displayed obvious bias against Plaintiffs in front of the jury. The Court stands by all of its decisions throughout the course of Plaintiffs' trial as explained below. In any event, because Plaintiffs utterly failed to present evidence sufficient to support a verdict in their favor, any error the Court may have committed was harmless such that Plaintiffs are not entitled to a new trial.

        A.        BIFURCATION OF THE FRAUDULENT CONCEALMENT AND WRONGFUL DEATH PHASES OF TRIAL

Federal Rule of Civil Procedure 42(b) provides that "for convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." FED. R. CIV. PRO. 42(b). *See also De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993). Because "it is clear that Rule 42(b) gives courts the authority to separate trials into liability and damage phases," courts may also separate trials into liability and dispositive defense phases. *See De Anda v. City of Long Beach*, 7 F.3d at 1421 (citing *Arthur Young & Co. v. U.S. Dist. Ct.*, 549 F.2d 686, 697 (9th Cir.), *cert. denied*, 434 U.S. 829 (1977)). *See also Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982) (noting that bifurcation was appropriate where the resolution of one issue would negate any reason for presentation of evidence on another)*; Ellingson Timber Co. v. Great Northern Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) (stating that "one of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues"). Separate trials, however, are not appropriate when the bifurcated issues "are so intertwined" that the party opposing the bifurcation would suffer prejudice should the issues be tried separately. *Miller v. Fairchild Ind., Inc.*, 885 F.2d 498, 511 (9th Cir.1989) (citation omitted), *cert. denied*, 110 S.Ct. 1524 (1990); *Hayden v. Chalfant Press, Inc.*, 281 F.2d 543, 544 (9th Cir. 1960).

As a preliminary matter, Plaintiffs incorrectly contend that "in order to prevail at trial, Plaintiffs were required to prove both that the shooting was wrongful and that the defendants misled plaintiffs with a police report containing material misrepresentations and omitting material information." To the contrary, in order to *get to* trial on the wrongful death issue, Plaintiffs were required to prove that material information had been fraudulently concealed from them in an attempt to keep them from filing suit within the statute of limitations. Without fraudulent concealment, Plaintiffs would be unable to overcome Defendants' assertion of the statute of limitations affirmative defense, making the issue of liability for their son's death moot (for the purposes of litigation only). As such, the bifurcation of the wrongful death and fraudulent concealment issues was crucial to the expeditious and economical resolution of the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

case.  Yet, Plaintiffs claim that proof that their son's shooting was wrongful was so intricately intertwined with proof of fraudulent concealment that they were effectively precluded from prevailing during the first phase of the trial.  Plaintiffs specifically claim prejudice resulted from the fact that they were unable to use the alleged fact that Decedent's death was wrongful as proof of Defendants' *motive* to fraudulently conceal material information.  However, even assuming (against the Court's better judgment) that such motive evidence might prove the intent element of fraudulent concealment as Plaintiffs contend, it still cannot make up for the dearth of evidence Plaintiffs presented to satisfy the other elements of this claim.[5]

Plaintiffs claim that witness Ricardo Macias was "an important witness on the liability issue as well as on the statute of limitations."  (Mtn. at 6.)  Yet, Plaintiffs admit that the report does not conceal Macias' status as an eyewitness to the shooting.  (Id.)  Rather, the report states that Macias observed Decedent fall to the floor after being shot from a vantage point similarly behind the counter.  (Id.)  Therefore, while Macias might have been able to testify to what Decedent was doing prior to being shot, that his *entire* statement was not included in the police report says virtually nothing about fraudulent concealment.  If his inclusion in the police report was insufficient to put Plaintiffs on notice that Macias might be a crucial eyewitness, the Court is unsure of what would have been.[6]  Given the information in the police report, Plaintiffs were more than capable of proceeding with a meaningful investigation of Macias' account had they so desired.  However, based on Lourdes' testimony, that was not their desire, until Plaintiffs' Counsel appeared at their doorstep after the statute of limitations had expired.

Plaintiffs also claim that because their expert, Roger Clark, could not testify as to why

---

[5] The Court reminds Plaintiffs that "the case having been granted clearance to proceed from the Ninth Circuit" does not vitiate Plaintiffs' burden to prove each and every element of their claim.  The Ninth Circuit's remand of this case simply required that Plaintiffs be afforded the opportunity to present evidence of fraudulent concealment in order to attempt to overcome Defendants' statute of limitations defense.  As Defendants note, however, Plaintiffs presented their evidence, "the jury deliberated and, thereafter, determined that Plaintiffs did not meet their burden of proof."  (Opp'n at 4.)

[6] Further, contrary to Plaintiffs' contention, the surveillance video excluded during the fraudulent concealment phase would not have corroborated Macias' testimony that he was in fact watching the Decedent and not the officers during the entire duration of the incident because the video does not show where Macias' attention was actually focused.  Indeed, the video depicts a vantage point behind Macias's head.  Therefore, these pictures do not "clearly" establish anything other than the fact that, as the police report notes and Macias approved, Macias was in the restaurant and behind the service counter at the time Decedent was shot, and was therefore an eyewitness to the incident.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

John Varnell's testimony was material to *liability*, it was impossible for him to explain why the omission of any mention of Varnell in the police report was intentional. Even supposing for the sake of argument that the dispatch improperly failed to provide officers with information regarding the scene as it stood when Varnell left, as Plaintiffs would have had Clark contend, Varnell would have been able to offer no percipient testimony as to the events immediately prior to the shooting such that he would have been helpful in determining liability. Officer Maitlen's decision to shoot the Decedent was not predicated on the dispatcher's failure to tell him that the Decedent was restrained while Varnell was watching because the photos submitted by Plaintiffs themselves indicate that the Decedent was no longer restrained after Varnell left the scene leading up to the moment Decedent was shot. Thus, if Varnell could contribute nothing to the liability issue, then his exclusion from the police report could not have been intended to prevent Plaintiffs from discovering relevant facts necessary to initiate their wrongful death suit. That Plaintiffs feel Clark could establish otherwise demonstrates their misunderstanding of their own burden on this issue.

Plaintiffs themselves recognize that their fraudulent concealment case contained "missing gaps" (Mtn. at 4), but claim those gaps existed as a result of the bifurcation of the liability issue. Plaintiffs are mistaken. Plaintiffs' Motion repeatedly refers to the police report as the basis for "their decision not to file a lawsuit within the two year statute of limitations." (Mtn. at 3.) However, notwithstanding the fact that Plaintiffs did manage to file a wrongful death claim with the City before they even received that police report, Lourdes Gomez admitted that the report played virtually no role in the family's decision not to file suit. Instead, she stated, she and her mother decided not to further investigate the incident because it was, understandably, too hard for them to relive. Because testimony of Plaintiffs' witnesses shows that Plaintiff not only failed, but indeed, chose not to use reasonable diligence to attempt to discover facts about the alleged wrongful conduct, Plaintiff's could not meet their burden to prove all of the elements of fraudulent concealment.[7] Therefore, Plaintiffs could not have been prejudiced by the inability to present their purported "motive" evidence, nor the bifurcation of the trial into two phases. A new trial on this basis would thus be improper.

B.  EXCLUSION OF EVIDENCE

Plaintiffs next contend that the Court erred in excluding evidence they claim would have established that Defendants' alleged omissions were intentional. "A new trial is only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party." *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir.1995) (citation omitted). A harmless error by a district court in an evidentiary ruling does not justify disturbing a jury's verdict. *Merrick v. Farmers*

---

[7] As explained more fully below, this was not the only element lacking.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

*Ins. Group*, 892 F.2d 1434, 1439 (9th Cir.1990) (citations omitted) (noting that a new trial is warranted only if a district court commits reversible error, which the complaining party must establish with proof that the court's error more probably than not tainted the jury's verdict).

First, Plaintiffs contend that the Court erroneously excluded evidence of a surveillance video showing Varnell at the drive-through window on the night of the shooting. Plaintiffs curiously state that "the events portrayed in [this] video and the fact of its suppression by the police department provides compelling evidence of intentional concealment." (Mtn. at 14.) However, Plaintiffs admit that they were able to "independently obtain[]" the video without Defendants' assistance, (Mtn. at 13) suggesting that Defendants did nothing to prevent their discovery of this evidence. Further, a conclusion that an omission was *intentional* does not necessarily follow from the fact of its existence, and Plaintiffs presented no evidence whatsoever by which Defendants' intent could be ascertained.

Plaintiffs next discuss evidence relating to a white car, the driver of which Officer Maitlen reported he spoke to before entering the restaurant. Plaintiffs speculate that although Varnell was watching the robbery and reporting to the dispatcher what he was seeing in real time, and although there was a truck partially blocking his exit from the drive-through, it is impossible that Officer Maitlin could have spoken to the driver of the white car that left the drive-through before Varnell pulled in and while Varnell's attention was focused elsewhere. Notwithstanding this rather two-dimensional theory, Plaintiffs failed to present any evidence of what they term "collusion" on the part of Defendants to conceal anything from them. Even assuming that the excluded evidence could prove intent or collusion as Plaintiffs posit, Plaintiffs still failed to present any evidence to support a finding of the other elements of fraudulent concealment. Indeed, even after obtaining the video, both Maria and Lourdes Gomez admitted that they had no interest in watching it (or asking anyone else to watch it) such that any evidence it might have provided would have led them to file suit any sooner. Therefore, any error in the exclusion of this evidence could not have been prejudicial, and a new trial is unwarranted.

C.   JURY INSTRUCTIONS AND VERDICT FORM

Plaintiffs next contend the jury instructions and verdict form were erroneous. "An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." *Swinton v. Potomac Corp.*, 270 F.3d 794, 805 (9th Cir.2001). *See also Tritchler v. County of Lake*, 358 F.3d 1150, 1154 (9th Cir.2004). Because Plaintiffs themselves negated a number of the elements of fraudulent concealment through the testimony that they themselves presented, a jury instruction (improper or not) on "policy, custom or practice" of the City of Torrance could not have prejudiced Plaintiffs or tainted the verdict. Similarly, even if the inclusion of individuals for whom Plaintiffs presented no evidence of fraudulent concealment on

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

the verdict form was erroneous, such error cannot be supposed to have had an effect on the jury's determination of fraudulent concealment on the part of those for whom Plaintiffs did attempt to present evidence. Neither the jury instructions nor the verdict form justify a new trial.

    D.    ALLEGED JUDICIAL BIAS[8]

Plaintiffs contend that the Court displayed obvious bias against their case in front of the jury, thereby denying Plaintiffs of a fair trial. (Mot. at 26.) Specifically, Plaintiffs point to the Court's cross-examination of witnesses and alleged non-verbal conduct that they claim taints the jury's verdict.[9] The Court will examine each complaint in turn.

It is "well established that the judge may question [] witness[es] directly." *United States v. Lopez-Martinez*, 543 F.3d 509, 513 (9th Cir. 2008). Indeed, "it is entirely proper for him to participate in the examination of witnesses for the purpose of clarifying the evidence, confining counsel to evidentiary rulings, controlling the orderly presentation of the evidence, and preventing undue repetition of testimony." *United States v. Mostella*, 802 F.2d 358, 361 (9th Cir.1986). "The court 'overstep[s] the bounds of propriety and deprive[s] the parties of a fair trial,' thus requiring a new trial, only if the record 'discloses actual bias on the part of the trial judge or leaves the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality.'" *Swinton v. Potomac Corp.*, 270 F.3d 794, 808 (9th Cir. 2001) (citations omitted). *See also Navellier v. Sletten*, 262 F.3d 923, 942 (9th Cir.2001) (judge did not commit reversible error by commenting on witnesses credibility). Moreover, "even if any comment could be considered prejudicial, any prejudice [may be] cured by the court's . . . jury instructions" stressing that jurors are the sole fact-finders and that they are not to interpret anything the judge might have said or done as showing favor to any party. *Id*. at 943.

Here, the Court's questioning of various witnesses served the purpose of elucidating the

---

[8] The Court notes that the length of Plaintiff's Motion is violative of this Court's Standing Order. *See* Standing Order ¶ 5(c). The Court would therefore be justified in declining to consider this portion of Plaintiffs' Motion. Nevertheless, the Court will, yet again, afford Plaintiff every benefit of the doubt and consider the entirety of Plaintiffs' arguments.

[9] As a preliminary note, Plaintiffs provide no evidence that any *juror* was in any way swayed by any of the Court's comments or actions. Indeed, all of Plaintiffs' declarations are provided by their own witnesses or legal team, and are therefore themselves biased.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

scant evidence Plaintiffs presented to satisfy their burden on the fraudulent concealment elements. Indeed, because Plaintiffs' Counsel himself admitted at various times that he was unsure of how to proceed, the Court attempted to elicit any bit of relevant testimony there might have been on the issues to be decided in that phase of trial. Even if any bias had resulted from the Court's examination, the Court clearly instructed the jury that it was not to "infer . . . from anything [the Court] may say or do as indicating that [the Court has] an opinion regarding the evidence or what [the] verdict should be."

Further, the record clearly indicates that Plaintiffs were given every possible benefit of the doubt such that it must be clear that there existed no actual bias against them. For instance, when Plaintiffs' case was "circling the drain," so to speak, the Court allowed Plaintiffs to re-call Lourdes Gomez to once again try to elicit testimony from her regarding the effect that the police report, fraudulent or otherwise, had on her family's decision not to file suit within the statute of limitations. Ms. Gomez had not been excluded from the proceedings, but rather, had been seated in the gallery since the conclusion of her testimony the preceding day and was well aware of the challenges her Counsel had encountered. The Court would have thus been justified in refusing to allow Plaintiffs to re-call her. However, as the Court noted, because Lourdes was the only party at that point who could shed any light on the elements Plaintiff's Counsel still needed to establish such that Plaintiffs could hold out any hope of prevailing, the Court indulged Plaintiffs one last bite at the apple. That Plaintiffs' Counsel was once again unable to coax his witness to establish these elements does not support his view that the Court was biased against Plaintiffs' case.

The Court then allowed Plaintiffs' Counsel to question his own investigator, Ron Cain, on tangential issues, as Plaintiffs' Counsel expressed concern over his team having been portrayed as "ambulance chasers" the day before. The Court informed Counsel that it was "much more interested in [Counsel] saving [Plaintiffs'] lawsuit" than saving face, so to speak, but nonetheless allowed Counsel to attempt to rehabilitate his own image and that of his investigator. If that was not enough, the Court then denied the directed verdict to which Defendants were, in the Court's opinion, entitled, and rather submitted the case to the jury as Plaintiffs requested.

As for the Court's alleged non-verbal conduct, the Court finds it interesting that Plaintiffs' Counsel himself failed to notice *any* of the conduct which Plaintiffs' declarants now maintain was so obvious. Indeed, Plaintiffs' Counsel was sitting immediately in front of the jury all throughout trial, and enjoyed the same view of the Bench as the jury did. Indeed, if Plaintiffs' Counsel failed to view the Court's alleged non-verbal conduct from this location, it is likely that the jury too could not have witnessed the Court's every last expression. Regardless, Plaintiffs presented so little evidence to support their theory of the case that any conduct the jury might have in fact observed would have been harmless. Finally, any prejudicial impact the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-790 ODW (SHx) | Date | April 23, 2010 |
|---|---|---|---|
| Title | *Gomez, et al. v. City of Torrance, et al.* | | |

Court's expressions of incredulity regarding witness credibility might have created was nullified by the Court's instruction that the jury was to disregard any of the Court's words or actions and consider the evidence presented for themselves. As such, the jury's verdict cannot be said to have been tainted by any of the Court's conduct, and a new trial on this basis is unnecessary.

### IV.   CONCLUSION

In the end, Plaintiffs were unable to meet their burden to prove that those facts relevant to their institution of a wrongful death claim had been intentionally or fraudulently concealed from them. Not only did Plaintiff herself admit that she did not recall ever seeing the police report at issue, but her daughter, Lourdes, admitted that Defendants did not actually do anything to prevent them from filing suit. That Plaintiffs' Counsel has a view of the facts inconsistent with those that he himself was able to adduce at trial from his own clients is irrelevant to the matter of whether Plaintiffs in fact were deprived of a fair and impartial trial.[10] For the foregoing reasons, the Court DENIES Plaintiffs' Motion for New Trial.

IT IS SO ORDERED.

|  | : | 00 |
|---|---|---|
| Initials of Preparer | RGN | |

---

[10] By this, the Court does not mean to denigrate Plaintiffs' obvious pain stemming not only from the tragic loss of their son, but also from their protracted entanglement in Plaintiffs' Counsel's now well- documented, obsessive, personal vendetta against the Torrance Police Department. (*See e.g.*, Dkt. # 50.) The Court is aware of the biased *connotation* that the second part of this footnote creates. However, the Court further wishes to note that any such bias was never and is in no way directed towards Plaintiffs themselves, and that such sentiments were only evoked subsequent to the Court's undertaking of a full and complete review of Plaintiffs materials in the context of Plaintiffs' Counsel's unprovoked and unprofessional outbursts at the March 15, 2010 hearing on the instant Motion for New Trial. (*See* Transcript of New Trial Motion Hearing, Gomez, et al. v. City of Torrance, et al., CV 07-790 (C.D.Cal. Mar. 15, 2010).)